EDWARD WAYNE WEST,

        Petitioner,

    v.                                     Case No. 14-cv-1163-pp

UNITED STATES OF AMERICA,

        Respondent.

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT
SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1), DENYING MOTION FOR
EVIDENTIARY HEARING (DKT. NO. 3); DENYING AS MOOT MOTIONS FOR
PROMPT DISPOSITION (DKT. NOS. 20, 23); DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

## I.    **Background**

    A.    <u>Criminal Charges and Pretrial Proceedings</u>

On June 10, 2008, a grand jury indicted the petitioner on multiple

charges relating to an armed bank robbery. <u>United States v. West</u>, Case No. 08-

cr-157 (E.D. Wis.), at dkt. no. 4. The petitioner filed two pretrial motions—a

motion to suppress testimony from witnesses that they identified the petitioner

out of a lineup, <u>id.</u> at dkt. no.10, and a motion to suppress the physical

evidence seized incident to his arrest and his post-arrest statement, <u>id.</u> at dkt.

no. 11. The assigned magistrate judge recommended that Judge Charles N.

Clevert, Jr., the judge to whom the case was assigned, grant the motion to

suppress testimony that witnesses had identified the petitioner from a lineup,

concluding that the lineup was conducted in violation of the petitioner's right

to counsel. Dkt. No. 31. Judge Clevert adopted that recommendation and granted the motion to suppress the witness identifications that resulted from the lineup. Id. at Dkt. No. 51. The magistrate judge recommended that Judge Clevert deny the motion to suppress evidence and his post-arrest statement. Id. at Dkt. Nos. 31, 42. Judge Clevert adopted that recommendation as well, and denied the motion to suppress evidence and statements. Dkt. No. 53.

About a month later, and just shy of three weeks before the scheduled trial date, the petitioner signed a conditional plea agreement, pleading guilty to one count of bank robbery, one count of armed bank robbery and one count of carrying a firearm in furtherance of a crime of violence. Id. at Dkt. No. 59. The agreement allowed the petitioner to appeal Judge Clevert's denial of his motions to suppress evidence and his post-arrest statement. Id. at 1.

B.    Sentencing

Judge Clevert held a sentencing hearing on January 28, 2010. Id. at Dkt. No. 71 (transcript at Dkt. No. 84). The government recommended a twenty-year sentence. Id., Dkt. No. 84 at 8. Defense counsel recommended a sentence between ten and fifteen years. Id. at 18. Judge Clevert imposed a sentence of 230 months—nineteen years and two months; 146 months each on the two robbery counts, to run concurrently with each other, and eighty-four months on the charge of using and carrying a firearm during and in relation to a crime of violence. Id. at 29.

C.    Post-Sentencing

The petitioner filed a notice of appeal on February 4, 2010. Id. at Dkt. No. 73. He argued that the district court erred "when it agreed to allow witnesses to make in-court identifications without first determining whether an in-court identification would have an independent basis and would be free from the taint of an improper lineup[,]" United States v. West, 628 F.3d 425, 427 (7th Cir. 2010) and that the district court erred by relying on an impermissible factor—the petitioner's socioeconomic status—when determining the appropriate sentence, United States v. West, Case 10-1292, Dkt. No. 12-1 at 2 (7th Cir. June 2, 2010).

The Seventh Circuit vacated the petitioner's convictions, finding that under United States v. Wade, 388 U.S. 218, 240 (1967), the government needed to show (and the district court needed to find) clear and convincing evidence that there was an independent basis for a witness' in-court identification. West, 628 F.3d at 430. It remanded the case, instructing Judge Clevert to make findings of fact under Wade and noting that "depending on the outcome of that determination, the district court may reinstate the convictions or order a trial." Id. at 430-31.

Because of the possibility that the convictions could be reinstated, the Seventh Circuit also addressed the petitioner's sentencing arguments. Id. at 431. The Seventh Circuit observed that Judge Clevert had calculated the guideline sentencing range at 272 to 319 months and had sentenced the petitioner to 230 months. Id. It remarked that

3

in reviewing a sentence, we first look to whether the district court committed any procedural error, 'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

Id. (quoting United States v. Scott, 555 F.3d 605, 608 (7th Cir. 2009)). The

Seventh Circuit concluded that the district court "did not rely on an

impermissible factor in sentencing or err procedurally in any other way." Id.

As for the petitioner's socioeconomic status argument, the Seventh

Circuit said that

[t]he district court's discussion of West's access to health care came in the context of a broader discussion of both the defense arguments for a lower sentence and other relevant § 3553(a) factors, including the history and characteristics of the defendant, the nature of the offense, and the need to protect the community from future crimes. Section 3553(a)(2) required the court to address West's medical needs: "The court, in determining the particular sentence to be imposed, shall consider—(2) the need for the sentenced imposed—(D) to provide the defendant with needed . . . medical care . . . in the most effective manner." The transcript indicates only that the district court was addressing the effect that a sentence might have on the defendant's access to medical care, which was an issue the defense had raised. When the defense raises such an issue, the district court is entitled to consider the counterfactual: what kind of medical care would be available to the defendant with a different sentence? To the extent those circumstances might be affected by wealth, income, or socioeconomic status, consideration of the defense argument cannot be turned in a Catch-22 for the district court, where it would be error not to consider and address the issue, but also error to consider the factors affecting access to medical case. We see here only proper consideration of a relevant but unpersuasive defense argument for a lighter sentence. We find no improper consideration of West's socioeconomic status. Moreover, the district court sentenced West well below the guidelines range. We find no error.

Id. at 431-32.

On remand, Judge Clevert held a <u>Wade</u> hearing. <u>West</u>, Case No. 08-cr-157 at Dkt. No. 101. At the end of the hearing, the petitioner made an oral request to withdraw his guilty plea. <u>Id.</u> Five days later, Judge Clevert issued written findings of fact, concluding that "the government has shown by clear and convincing evidence that its three lineup witnesses may be asked at trial whether they can identify the defendant." <u>Id.</u> at Dkt. No. 102. Judge Clevert then recused himself from presiding over the motion to withdraw the plea. <u>Id.</u> at Dkt. No. 106. In March of 2012, Judge Rudolph T. Randa issued an order denying the petitioner's motion to withdraw his guilty plea; he later issued an order reinstating the petitioner's conviction. <u>Id.</u> at Dkt. No. 111.

The petitioner appealed Judge Randa's order. <u>Id.</u> at Dkt. No. 112. He made one argument on appeal: that the government did not prove by clear and convincing evidence that there was a basis for a bank employee's identification of the petitioner independent of her lineup identification. <u>United States v. West</u>, Case No. 12-1858, Dkt. No. 11 (7th Cir. Aug. 17, 2012). The Seventh Circuit affirmed on June 25, 2013, <u>United States v. West</u>, 528 F. App'x 602 (7th Cir. 2013), and the mandate issued on July 17, 2013. <u>West</u>, Case No. 08-cr-157 at Dkt. No. 119.

## II.     The Parties' Arguments

### A.     The Petitioner's Arguments (Dkt. No. 2)

On September 22, 2014, the petitioner, representing himself, filed a motion to vacate, correct or set aside his sentence under 28 U.S.C. §2255. <u>West v. United States</u>, Case No. 14-cv-1163, at Dkt. No. 1. The motion listed

four grounds for relief: (1) the sentencing court committed a due process violation by failing to compute the applicable guidelines range at sentencing; (2) the sentencing court committed a due process violation by lengthening the petitioner's sentence due to health care concerns, in violation of <u>Tapia v. United States</u>, 564 U.S. 319 (2011); (3) the district court violated his due process rights because the court intended for the petitioner to serve less than twenty years, but did not consider the petitioner's parole violation, which lengthened the cumulative total of the petitioner's sentence to twenty-six and one-half years; and (4) ineffective assistance of trial and appellate counsel for failing to raise the issue of the additional sentence for parole violation, failing to argue the applicable guidelines, and failing to raise the <u>Tapia</u> issue. <u>Id.</u> Judge Clevert issued a screening order in December 2014 and allowed the petitioner to proceed on all grounds. Dkt. No. 6.

The petitioner asserts that Judge Clevert imposed a sentence that was "over double" the applicable guidelines range. Dkt. No. 2 at 3. He argues that "[t]he Court rejected the career criminal enhancement, see TR 1/28/2010, pg 20, ln 5-14" and that both the government and his defense counsel agreed. <u>Id.</u> at 4. The petitioner contends that once the court decided the career offender guideline should not apply, the proper guideline range was 57-71 months—a range which he contends the court did not consider. <u>Id.</u> at 4. The petitioner says that the court erroneously used the government's twenty-year recommendation as a benchmark and tailored a sentence to fit that request. <u>Id.</u>

He asks the court to re-sentence him to a sentence within the 57-to-71-month guideline range. Id.

The petitioner's second ground asserts that Judge Clevert imposed a longer sentence so that the petitioner could obtain healthcare provided by the Bureau of Prisons. Id. at 6. He argues that the Tapia Court held that imprisonment wasn't the appropriate way to achieve drug treatment and argued that the same was true for health care. Id. He notes that Tapia was decided after his first direct appeal became final but before he filed his second appeal, and that Tapia applies to him "even if counsel failed to raise it in the second direct appeal." Id. at 7. The petitioner also contends that other laws passed since his sentencing (such as the Affordable Care Act of 2010) would make it easier for him to obtain healthcare without needing the Bureau of Prisons to provide it. Id.

Third, the petitioner argues that his understanding of the plea agreement was that when the government agreed to recommend a sentence of twenty years, it meant that it would recommend a sentence of twenty years minus the seven and a half years he had left to serve on a parole violation. Id. at 9. He asks the court to "enforce[ ] the plea promises." Id.

Finally, the petitioner argues that he received ineffective assistance from both his trial and appellate counsel. Id. at 10-11. He says that his counsel missed the Tapia change in the law in the time between his first and second direct appeals and should have raised it on the second appeal. Id. at 10. He states that this court must order an evidentiary hearing to determine why his

counsel did not challenge the sentence calculations, did not argue the petitioner's understanding of the government's promise in the plea agreement and did not argue the <u>Tapia</u> issue. <u>Id.</u> at 11.

B.    <u>The Government's Response (Dkt. No. 7)</u>

The government first questions the timeliness of the §2255 motion, noting that while the Seventh Circuit affirmed his convictions on June 25, 2013, the petitioner did not file the motion until September 22, 2014. Dkt. No. 7 at 3. It argues that the motion is time-barred under the one-year statute of limitations deadline imposed by §2255(f). <u>Id.</u>

Next, the government asserts that the petitioner did not raise these claims before the trial court or on direct appeal and that they are procedurally defaulted. <u>Id.</u> at 3-4 (citing <u>United States v. Frady</u>, 456 U.S. 152, 162-66 (1982)). As for the petitioner's ineffective assistance of counsel claims, the government argues that the petitioner cannot show deficient performance from his attorney. <u>Id.</u> at 5. It observes that the sentencing transcript contradicts the petitioner's claim that Judge Clevert failed to calculate, or incorrectly calculated, the sentencing guideline range because both the PSR and the court calculated the range at 272 to 319 months. <u>Id.</u> at 5 (citing <u>West</u>, Case No. 08-cr-157, dkt. no. 84 at 12, 28). It observes that Judge Clevert did not commit a <u>Tapia</u> error because all he did was "not[e] the availability of health care in the federal prison system in response to [the petitioner's] argument that his need for blood pressure treatment and other health concerns warranted imposing a

shorter sentence." Id. at 6 (citing United States v. Consago, 520 F. App'x 465, 468 (7th Cir. Apr. 8, 2013)).

Last, the government argues that the petitioner's claim about Judge Clevert only intending for him to serve twenty years in prison (and failing to consider the then-impending parole violation adding seven and a half years to the term) is a conclusory assertion unsupported by any details or evidence. Id. at 7. It points out that "according to the Bureau of Prisons website, [the petitioner's] anticipated release date is February 2025, which is consistent with the 230-month sentence (after taking into consideration time spent in custody and good time)." Id. at 8.

C.     The Petitioner's Reply (Dkt. No. 12)

The petitioner argues that under Clay v. United States, 537 U.S. 522 (2003), he had one year and ninety days to file his §2255 motion; he says that he filed the motion on September 22, 2014, before the September 25, 2014 deadline. Dkt. No. 12 at 2. He reiterates his belief that the career offender provision of the guidelines did not apply to him. Id. at 2-3. He reiterates his belief that Tapia prohibits district courts from considering health care needs when imposing punishment. Id. at 3-4. As for his parole violation argument, the petitioner says that the person who originally prepared his §2255 motion did not thoroughly research the issue. Id. at 4 n.2. He states that "upon further research . . . the government is correct and this issue at this time appears to be without merit but may ripen at a later date." Id. at 4. He asks the court to stay

and abey its decision on his parole claim until he can secure a ruling from the parole commission. Id. at 5.

D.    Other Filings

The petition was fully briefed in April 2015—over four and a half years ago. Between that date and March 2017, the petitioner filed a notice of change of address, dkt. no. 13, a letter motion for a report on the status of the case, dkt. no. 14, and a motion requesting a response, dkt. no. 16. Judge Clevert did not rule on either of the two motions.

At the end of March 2017, Judge Clevert wrote to the petitioner, informing him that the case would be re-assigned upon Judge Clevert's impending retirement. Dkt. No. 17. The letter also told the petitioner, "[r]egarding your request that the court stay any ruling on the 'parole violation/sentence issue,' the court will need to rule on the issue to resolve your motion. Please clarify whether you wish to withdraw that issue from consideration or wish the court to rule on it." Id.

The case was reassigned to this court on March 31, 2017; since then, the petitioner has written the court seven times. None of those letters or pleadings answered the question Judge Clevert had asked. The petitioner wrote on June 26, 2017, but did not provide the clarification Judge Clevert requested; he only asked for information about the status of his case. Dkt. No. 18. He wrote another letter on October 6, 2017, again requesting an update. Dkt. No. 19. In March of 2018, the petitioner filed a motion for prompt disposition. Dkt. No. 20. Three months later, the petitioner filed a "request for disposition on 2255

petition." Dkt. No. 21. In July and August of 2018, the petitioner filed two final documents, a "request for disposition" and a "motion for prompt disposition." Dkt. Nos. 22-23. Finally, in October of 2019, the petitioner informed the court that he had filed a petition for writ of mandamus with the Seventh Circuit Court of Appeals. Id. at 24.

The court will address the motions for prompt decision, and its delay, at the end of this order.

**III.    Analysis**

    A.    <u>Standard</u>

Section 28 U.S.C. §2255 allows a federal prisoner to ask the court that imposed sentence to vacate, set aside, or correct it "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. §2255(a). "'[N]ot every error is corrigible in a post-conviction proceeding, even if the error is not harmless.'" <u>Hanson v. United States</u>, 941 F.3d 874, 876 (7th Cir. 2019) (quoting <u>Hawkins v. United States</u>, 706 F.3d 820, 823 (7th Cir. 2013)). Put another way, "'relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice."'" <u>Id.</u> (quoting <u>United States v. Coleman</u>, 763 F.3d 706, 708 (7th Cir. 2014)).

B.    Timeliness

Under 28 U.S.C. §2255(f), a petitioner has one year to file a motion challenging his conviction or sentence under this section. The one-year period begins to run from the latest of one of four events; in this case, from "(1) the date on which the judgment of conviction becomes final[.]" 28 U.S.C. §2255(f)(1). As the petitioner correctly notes, in Clay, the Supreme Court recognized that "for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." Clay, 537 U.S. at 532; see also Hanson, 941 F.3d at 876. Supreme Court Rule 13 afforded the petitioner ninety days from the date the Seventh Circuit affirmed the district court's judgment to file for a writ of *certiorari*; in other words, he had ninety days from June 25, 2013—until September 23, 2013—to petition for *certiorari*. Supreme Court. S. Ct. R. 13(1) & (3). He did not petition for *certiorari*, so his one-year time clock began to run on September 23, 2013 and expired on September 23, 2014. He filed this motion on September 22, 2014; it is timely.

C.    Exhaustion

For a claim to be cognizable on §2255 review, the petitioner must have raised it on direct appeal. "Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) (citing Hale v. United States, 710 F.3d 711, 713-

14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." Id. (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). However, because "claims of ineffective assistance, by their very nature, are almost 'invariably doom[ed]' on direct appeal," "we thus permit these claims, in most instances, to be raised for the first time on collateral review." Id. (quoting United States v. Gilliam, 255 F.3d 428, 437 (7th Cir. 2001)); see also Massaro v. United States, 538 U.S. 500, 505 (2003).

It does not appear that the petitioner argued on appeal that Judge Clevert inappropriately calculated the sentencing guidelines, or that Judge Clevert inappropriately lengthened the petitioner's sentence based on the petitioner's medical needs, or that Judge Clevert imposed a sentence that violated what the petitioner understood the plea agreement to promise. The petitioner does, however, argue that his trial and appellate counsel were deficient because he failed to raise these issues in the trial and appellate courts. And ineffective assistance of appellate counsel can constitute "cause" to excuse a petitioner's procedural default. Trevino v. Thaler, 569 U.S. 413, 422 (2013) ("ineffective assistance of counsel on direct appellate review could amount to 'cause,' excusing a defendant's failure to raise (and thus procedurally defaulting a constitutional claim.")). Further, the petitioner points out that the Supreme Court did not issue the Tapia decision until *after* the petitioner's first direct appeal was final.

The government's opposition brief contains a cursory argument on exhaustion; it does not address the timing of the Tapia decision and admits that the petitioner's claims for ineffective assistance of counsel are not procedurally defaulted. The court doesn't need to resolve these potentially thorny procedural questions because even if the court found the claims properly exhausted, they are meritless. See Carrion v. Butler, 835 F.3d 764, 772 (7th Cir. 2016) ("we need not address these potentially difficult procedural questions, however, because even it we were to decide each of them in [the petitioner's] favor, his claims clearly fail on the merits."); see also Estremera v. United States, 724 F.3d 773, 775 (7th Cir. 2013) ("It makes sense (and is permissible) to reject a collateral attack on the merits while other procedural defenses, such as [statutes of limitations,] waiver, default, or lack of exhaustion, remain in the background.")

D.     Additional Facts

Additional facts from the record are helpful in considering the petitioner's arguments.

As noted, the indictment charged the defendant with armed bank robbery on May 12, 2008 (Count One); using and carrying a firearm during and in relation to that violent crime, in violation of 18 U.S.C. §924(c) (Count Two); armed bank robbery on May 23, 2008 (Count Three); and using and carrying a firearm during and in relation to that violent offense, in violation of 18 U.S.C. §924(c) (Count Four). United States v. West, 08-cr-157 at Dkt. No. 4. At the time the petitioner entered his guilty plea, the government issued a one-count

14

information, re-charging the May 12, 2008 robbery as a bank robbery only, *not* an armed bank robbery. <u>Id.</u> at Dkt. No. 61. The plea agreement provided that the petitioner would plead guilty to the bank robbery charged in the information, the *second* bank robbery charged in the indictment (the May 23, 2008 robbery charged in Count Three of the indictment), and the §924(c) charge associated with the May 23, 2008 bank robbery (Count Four). <u>Id.</u> at Dkt. No. 59, ¶¶5-6. As part of the plea agreement, the government agreed to ask Judge Clevert to dismiss Counts One (the May 12, 2008 armed bank robbery charge) and Two (the May 12, 2008 §924(c) charge) of the indictment at the time of sentencing. <u>Id.</u> at ¶10.

Section 924(c) mandates that if a person uses or carries a gun during and in relation to a violent crime (like a bank robbery), the court must impose a mandatory minimum sentence of five years, "in addition to [consecutive to] the punishment provided for such crime of violence." If the person "brandishes" the firearm during the crime of violence, the mandatory minimum sentence increases to seven years consecutive to the sentence the court imposes for the crime of violence. The law says that "brandish" means "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. §924(c)(4).

The facts in the presentence report indicate that on May 23, 2008, the petitioner went to the teller's window of the Landmark Credit Union on North 124th Street in Wauwatosa, put a silver and black semi-automatic handgun on

15

the counter, and demanded money. PSR, ¶13. Because he "brandished," or displayed, that firearm during the robbery, the fact that he pled guilty to the §924(c) charge meant that at sentencing, Judge Clevert was required by law to sentence the petitioner to serve seven years—eighty-four months—in prison on the §924(c) charge alone, *consecutive* to any sentence he might impose on the bank robbery charges.

In the plea agreement, the government laid out what it would recommend to the court in terms of the sentencing guidelines for the two robbery counts. United States v. West, 08-cr-157 at Dkt. No. 59. The government agreed to recommend the following:

| | | | |
|---|---|---|---|
| ¶18 | Base offense level for robbery | §2B3.1(a) | 20 |
| ¶19 | Enhancement--property taken from a financial institution | §2B3.1(b)(1) | +2 |
| ¶20 | Enhancement—loss of over $10,000 | §2B3.1(b)(7)(A) | +1 |
| ¶21 | Enhancement—multiple offenses | §3D1.4(a) | +1 |
| ¶22 | Decrease—acceptance of responsibility | §§3E1.1(a) and (b) | -3 |
| | | Adjusted offense level: | 21 |

The agreement also stated, however, that the parties understood, acknowledged and agreed "that the defendant may qualify as a Career Offender under the sentencing guidelines," and agreed that he could not withdraw his guilty plea if the court determined that he did qualify as a career offender. Id. at ¶23.

The government promised at ¶26 of the plea agreement to "recommend that the defendant be sentenced to a term of twenty (20) years' imprisonment."

It did not explain that recommendation. It did not state whether it would recommend that that sentence run consecutively or concurrently to any other sentences imposed by any other courts. It did not explain how much of that twenty-year sentence was for the two robbery counts and how much was for the §924(c) counts. It simply stated that it would recommend a sentence of twenty years.

The presentence writer also calculated the guidelines for the armed robbery charges. For the charge in the information—the May 12, 2008 robbery of the U.S. Bank on Capital drive (where the petitioner used a toy gun)—the PSR calculated the following:

| ¶24 | Base offense level for robbery | §2B1.3(a) | 20 |
| ¶25 | Enhancement—property taken from a financial institution | §2B3.1(b)(1) | +2 |
| | | | ——— |
| | | | 22 |

For the May 23, 2018 robbery of the Landmark Credit Union, the PSR calculated the following:

| ¶31 | Base offense level for robbery | §2B3.1(a) | 20 |
| ¶32 | Enhancement—property taken from a financial institution | §2B3.1(b)(1) | +2 |
| ¶34 | Enhancement—loss of over $10,000 | §2B3.1(b)(7)(B) | +1 |
| | | | ——— |
| | Adjusted offense level: | | 23 |

As for the multiple count calculation under §3D1.4, however, the PSR calculated a +2 enhancement, using the table in that guideline. Adding those

two levels to the highest offense level of 23 (for the Landmark robbery) resulted in an adjusted offense level, before acceptance, of 25. ¶¶40-47.

Paragraph 48 of the PSR concluded that the petitioner *did* qualify as a career offender under Guideline §4B1.1. The petitioner was at least 18 when he committed the robberies (he was forty-one years old); the two robberies to which he pled guilty were crimes of violence; and the petitioner had at least two prior felony convictions for crimes of violence, including a 1985 federal conviction in the Eastern District of Wisconsin for which he received a twenty-year sentence (¶57) and a 1995 federal conviction in the Eastern District of Wisconsin for bank robbery for which he received a forty-six-month sentence (¶58). Because the petitioner qualified as a career offender, §4B1.1 increased his offense level to 34. ¶48. The PSR reduced that offense level by 3 for acceptance of responsibility under §§3E1.1(a) and (b), resulting in an adjusted offense level of 31. ¶¶49-51.

The petitioner had eight (8) criminal history points, which normally would have placed him in criminal history category IV. ¶61. Because he qualified as a career offender, however, his criminal history category increased to VI. Id. Under the 2009 version of the Sentencing Guidelines, offense level 31 in criminal history category VI carried an advisory sentencing range of 188-235 months, or fifteen years eight months to nineteen years seven months. U.S. SENTENCING GUIDELINES MANUAL §5A (2009).

Because the petitioner also had been convicted of the §924(c) charge, however, the presentence writer was required to look to Guideline §4B1.1(c)(2)

to determine his advisory sentencing range. ¶52. That provision of the guidelines states that the applicable guideline range for a career offender convicted of a §924(c) charge is subject to *either* the range that results when one adds the mandatory minimum consecutive sentence (eighty-four months) to the low and high ends of the career offender range, *or* the sentencing range in the table in §4B1.1(c)(3), whichever was *greater*. Id.

Adding the eighty-four-month mandatory minimum sentence to the low and high ends of the guideline range resulted in an advisory sentencing range of 272 (188 +84) to 319 (235 + 84) months. ¶53. The table in §4B1.1(c)(3) resulted in an advisory guideline range of 262 to 327 months (because the petitioner had received a 3-level reduction for acceptance of responsibility). U.S. SENTENCING GUIDELINES MANUAL §4B1.1(C)(3) (2009); ¶53. Application note 3(B) to §4B1.1 indicated that the "greater" range was the guideline range with the "highest minimum term of imprisonment." U.S. SENTENCING GUIDELINES MANUAL §4B1.1, APPLICATION NOTE 3(B) (2009). Accordingly, the presentence report concluded that the applicable advisory sentencing range for the petitioner was 272 to 319 months. ¶¶53, 104.

The petitioner's attorney made two objections to the presentence report. United States v. West, 08-cr-157 at Dkt. Nos. 66, 70. He objected to ¶12 (which indicated that he'd pointed the toy gun during the May 12, 2008 robbery), asserting that the petitioner didn't point the gun at anyone, and he objected to ¶58 (which reflected the sentencing date in the petitioner's 1995 federal case as August 20, 1985), asserting that he was sentenced in that case on May 30,

1996. Id. at Dkt. No. 70. He did not object to the career offender classification, or the presentence writer's calculation of the advisory guideline range. So when the petitioner arrived in the courtroom for his sentencing on January 28, 2010, all of the parties—Judge Clevert, the prosecutor and defense counsel—were using a presentence report that calculated an advisory sentencing range, to which no party had objected, of 272 to 319 months, or twenty-two years eight months to twenty-six years four months. Each bank robbery count carried a statutory maximum penalty of twenty years, and the sentence mandated by §924(c) for Count Four was seven years.

At the beginning of the sentencing hearing, Judge Clevert asked defense counsel whether he had any "ongoing objections to the facts in the presentence report." Id. at Dkt. No. 84, page 4. Counsel responded that he did not. Id. When Judge Clevert asked the government the same question, the prosecutor noted that the defendant had maintained that the toy gun wasn't pointed at anyone, and she told Judge Clevert that she didn't disagree. Id. The parties also agreed that the date the petitioner was sentenced in the 1995 case was May 30, 1996. Id. at page 6.

Judge Clevert then turned to the government and asked for the prosecutor's "position respecting the guidelines." Id. at 8. The prosecutor responded by making the recommendation she'd agreed to make in the plea agreement and asking for a sentence of twenty years. Id. During her argument in support of that sentence, the prosecutor stated, "The sentencing recommendation by the government is clearly lower than that recommended by

20

the guidelines which starts at 262 months." <u>Id.</u> at 10. This appears to have been a misstatement, given that the presentence report reflected a low end of 272 months. Regardless, the prosecutor opined that "a 20-year sentence for him would put him at quite an advanced age and I think protect the public from further crimes." <u>Id.</u> at 11. At that point, Judge Clevert said, "In other words, you are asking the court not to impose a guideline sentence." <u>Id.</u> The prosecutor responded, "That's correct, Judge." <u>Id.</u>

At the end of her argument, the prosecutor asked Judge Clevert to impose a sentence of twenty years, to dismiss Count Two of the indictment and to impose a special assessment of $300. <u>Id.</u> Judge Clevert responded, "And I also assume you're asking the court to take into account three points for acceptance of responsibility and are moving that the third count be allowed in this particular case so that the defendant's offense level will go down to 31." <u>Id.</u> This court suspects that Judge Clevert meant third "point," not third "count." And the court suspects that he asked that question because in the plea agreement, the government had agreed to recommend only the 2-level decrease under §3E1.1(a), stating that "if the court determines at the time of sentencing that the defendant is entitled to the [two]-level reduction under § 3E1.1(a), the government agrees to make a motion regarding an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty." <u>United States v. West</u>, 08-cv-157, Dkt. No. 59 at ¶22. Judge Clevert was making certain that the government was making a motion for that third point.

The prosecutor responded, "Yes, Judge, I think that would be appropriate in this case, so I move for that at this time." Id. at Dkt. No. 84, page 12.

Judge Clevert granted the government's motion for the third point, which, he said, "tak[ing] into account the defendant's career offender status, would result in a criminal history score of VI, a guideline range of from 272 months to 319 months as to counts one and three. And it would call for a sentence of 84 months as to count four." Id. He asked whether either party disagreed with those calculations; defense counsel said he did not, as did the prosecutor. Id. at 12-13.

Judge Clevert then noted that the eighty-four-month sentence on Count Four "appears to be the required consecutive sentence." Id. at 13. He asked defense counsel whether he agreed or disagreed "as to how that is to be calculated in light of the advisory guideline range of 272 and 319 months and the government's recommendation that a total of 240 months be imposed?" Id. Defense counsel responded:

> Would I disagree or agree with how that is calculated? We didn't—we don't disagree with the guideline calculation and how that—how the guidelines incorporate the mandatory minimum sentence with the base offense level. I think that was correct how that was interpreted by the Probation Office.
>
> As far as how the—you know, how the judgment would look, I don't think we feel real strongly. Obviously, there has to be an 84-month sentence at least, and there more than likely will be considerably more than that. I don't feel real strongly on how that is actually worded.

Id. Judge Clevert explained that he was asking because he either could find that the eighty-four months "would be on top of the advisory guideline range,"

or he could find that it is "built into the guideline range and would then be subtracted." Id. at 13-14. He opined that the government appeared to have acknowledged in its recommendation that he could exercise the latter option. Id. at 14. Defense counsel indicated that he had no objection "to the government's method." Id. The prosecutor then chimed in, stating:

> And, Judge, to clarify, I tried to do quick math while I was sitting here, so if anyone wants to correct me that would be great. But if we did it that way, it would be for 240 months inclusive of the 84? It would be 84 months with respect to count four and it would be 156 months with respect to count one and three which would run consecutive.

Id.

This exchange, admittedly, is confusing. As the presentence report calculations reveal, the eighty-four-month mandatory minimum sentence was built into the advisory range of 272 to 319 months. If Judge Clevert had somehow added eighty-for months to the high and low ends of that range, and then imposed a sentence within the resulting range, that sentence would have been unlawful—it would have resulted from adding in the eighty-four-month §924(c) sentence twice. But the government clarified the issue, explaining that in asking for a twenty-year (240-month) sentence, it was asking for a sentence of 146 months on each of the robbery counts, to run concurrently, and a sentence of eighty-four months on the §924(c) count to run consecutively, for a total sentence of 240 months, or twenty years.

Defense counsel began his arguments by asking to discuss the psychological evaluation prepared by Dr. Levin off the record. United States v. West, 08-cr-157, Dkt. No.84 at 15-16. In particular, counsel stated that he

wanted to discuss the petitioner's health status. Id. at 16. Judge Clevert took a

short recess and met with counsel in his chambers. Id. When the lawyers

returned to the courtroom, defense counsel began his presentation with the

following:

> As has been discussed, Mr. West is 52 years old. According to a study by the—I think it was an August 2009 study by the Center for Disease Control, the average lifespan for an African-American male right now is 70 years old. So I think the government's suggested sentence of 20 years might very well result in Mr. West dying in prison.

> And I think, given Mr. West's health concerns that were raised in the evaluation of Dr. Levin, in addition to his high blood pressure that has been discussed in the presentence report, he is certainly someone who has health problems and might get sick down the road.

Id. at 17. Counsel cited a case in which the Seventh Circuit indicated that

sentencing courts should be cautious in imposing sentences that could turn

out to be death sentences, and argued that Judge Clevert should "study very

carefully here whether a 20-year sentence is absolutely sufficient and not

greater than necessary to comply with the purpose of sentencing." Id. at 18.

Counsel argued that twenty years was greater than necessary, and

recommended a sentence "in the neighborhood of 10 to 15 years, coupled with

a significant term of supervised release of five years . . . ." Id.

In making this recommendation, counsel argued that the petitioner's age

was a significant factor, because recidivism rates decline as age increases. Id.

Counsel argued that if Judge Clevert sentenced the defendant to fifteen years,

he would be "approximately 65 when good-time is calculated when he is

released." Id. at 20. Counsel discussed the petitioner's positive work history, and his history of being abused. Id.

The petitioner himself spoke to Judge Clevert, admitting that he shouldn't have gotten involved in the bank robberies and that he didn't have anyone to blame but himself. Id. at 23. He asked the court to be lenient. Id. Defense counsel followed up by pointed out that Dr. Levin found that the petitioner did not have antisocial personality disorder, which, along with the petitioner's remorse, should show that he was less likely to commit crimes in the future. Id. at 23-24.

Judge Clevert began his remarks by stating, "Well, Mr. West, when I look at your criminal history it is certainly clear that you are indeed considered and have been found a career criminal. Your criminal history includes crimes of violence." Id. at 24. The judge reviewed the prior bank robbery convictions, and found that the petitioner's history suggested that it was more likely than not that he would "not successfully complete a term of supervision." Id. at 25. Judge Clevert said he had "reservations" about imposing a sentence that would put the petitioner "back on the streets sooner rather than later." Id.

On the other hand, the judge said, the petitioner didn't seem to have been arrested or charged between completing his parole on the 1995 case and committing the robberies in 2008. Id. at 26. Judge Clevert opined that that meant the petitioner had showed that he could "live in the community." Id. That said, Judge Clevert pointed out that the petitioner had followed up a relatively successful period of release with bank robberies, where employees

were put in fear of their lives and where someone could have been hurt. Id. Judge Clevert felt that the petitioner's remarks showed that he was aware of the bad judgment that he'd shown, and found that the petitioner was "older than the average criminal;" he pointed out that statistics suggested that people over fifty committed fewer crimes and were less likely to reoffend. Id. at 26-27.

Judge Clevert then turned to the petitioner's health. Id. at 27. He stated:

> There are health issues which the court has been alerted to, and those too have to be taken into account by the court. 18 U.S.C. Section 3553(a)(2) requires nothing less. I say that in part because when folks get older they tend to see doctors more often. And if you are incarcerated, that means that the public will ultimately be paying the price. And if a person is older in prison, there probably is a likelihood that they will call upon the system to take care of whatever ills may crop up.
>
> Now, that's a plus and a minus. It's a plus in the sense that it provides—a prison setting provides a person with the opportunity to get regular medical care and attention. Considering your employment history and your current circumstances, it is certainly questionable whether or not you would get the same level of care in the community, especially in light of what's going on in Washington today. A healthcare bill has not been passed by the Congress, and there is no guarantee that any person without healthcare will have anything other than perhaps the likes of BadgerCare if he or she stays in the community. There's certainly no indication that you have independent means that you can use to obtain good and regular healthcare outside of a prison setting.

Id.

Judge Clevert moved on to talk about the impact of the bank robberies on the victims, and the fact that the petitioner had accepted responsibility and been cooperative (which he found to be a factor in the petitioner's favor). Id. at 28.

At this point, Judge Clevert pronounced the sentence.

26

As mentioned previously, the sentencing guidelines in this case, which are advisory, suggest a sentence between 272 and 319 months, with 84 of those months applying to count four, which is to be a consecutive sentence in your case.

The government has recommended a 240-monoth sentence which it calculates based upon its view that you have indeed been of assistance to the government and you have accepted responsibility for your crime.

Your attorney has asked for less and has noted the Seventh Circuit's comments to the effect that a sentence which is tantamount to a life sentence is one that the court should not entertain without thorough deliberation and consideration.

So with all of that having been said, this court believes that a 20-year sentence in this case is a little greater than is necessary under the circumstances with due regard for all of the factors that I have just articulated.

The court is therefore imposing the following sentence in your case:

As to counts one and three, the court imposes a sentence of 146 months.

As to count four, the court imposes a sentence of 84 months to run consecutive to counts one and three which are to run concurrently.

This sentence is no greater than necessary under the circumstance and, in the court's view, is reasonable in light of all the considerations which have been set forth on the record. It is below the advisory guideline range, but I believe it's sufficiently long so as to promote respect for the law, so as to deter adequately those who might be inclined to commit crimes. I certainly believe because of your age at the time you are likely to be released, even after you are—even after you receive good-time, that the public will be protected. The sentence will also ensure that you receive healthcare that may not likely be available to you outside of a prison setting. It will also provide you with psychological counseling which I believe is necessary and appropriate in order for you to be readjusted and for you to deal with all the circumstances which have been addressed in the presentence report and the accompanying documents.

<u>Id.</u> at 28-30.

E.    <u>Application of Law to the Facts</u>

1.    *Ground One—Calculation of the Guidelines*

In Ground One of his petition, the petitioner asserts that Judge Clevert did not rely on or compute the applicable guideline range. As the above facts show, that is incorrect. Judge Clevert observed that granting the petitioner three acceptance of responsibility points "would result in a criminal history score of VI, a guideline range of from 272 months to 319 months as to counts one and three. And it would call for a sentence of 84 months as to count four." <u>Id.</u> at 12. Later, when rendering his sentence, Judge Clevert said, "[a]s mentioned previously, the sentencing guidelines in this case, which are advisory, suggest a sentence between 272 and 319 months, with 84 of those months applying to count four, which is to be a consecutive sentence in your case." <u>Id.</u> at 28. And, on the petitioner's first direct appellate review, the Seventh Circuit explained that it had considered whether Judge Clevert properly calculated the guidelines and concluded that the district court "did not rely on an impermissible factor in sentencing or err procedurally in any other way." <u>West</u>, 628 F.3d at 425. Judge Clevert calculated the guideline range and relied on it, and the petitioner's trial lawyer was not ineffective for failing to argue otherwise.

The petitioner appears to acknowledge this at page 3 of his brief in support of the motion, because he recounts the guidelines calculations as provided above. Dkt. No. 2 at 3. He asserts, however, that

> [a]t the sentencing hearing, the Court opined the career offender guideline range was too harsh for West, especially since West had not committed a series of crimes, and that West had committed no crime since 2000. The Court held that West did not qualify under the intent of the career offender guideline, and the Court decided not to rely upon that range as the starting point for West's sentence computation. This rejection of the career offender guideline is countenanced by Seventh Circuit precedent. US V. CORNER 598 F.3d 411, 445 (7th Cir. 2010). The Court rejected the career criminal enhancement, see TR 1/28/2010, pg 20, ln 51-4. The Government and West agreed.

Id. Later in his brief, he says, "[t]he Court, and the parties, out of hand dismissed the career offender guideline range as inappropriate as potentially applied." Id. at 4. In his petition, he stated that "[t]he Court, the Defendant, and the Government agreed that although West had the predicate two prior convictions to be considered a career offender pursuant to U.S.S.G. § 4B1.1, the applicable sentence range and his criminal history precluded application." Dkt. No. 1 at 6-7.

The petitioner's assertions are flatly contradicted by the sentencing transcript, and the plea agreement. Nowhere in the sentencing transcript did Judge Clevert reject the career offender classification; in fact, he expressly found that the defendant was a career offender. Nowhere in the transcript did defense counsel or the government argue that petition was not a career offender. The petitioner cited "TR 1/28/2010, pg 20, ln 5-14" in support of this

argument; those lines are from *defense counsel's* argument in favor of a lower sentence. They read:

> [The petitioner] has proven an ability to conform himself to the law. He was on supervised release from 2000 to 2003, and that seemed to go pretty well. He worked consistently for about five to six years at Imperial Parking. He had no run-ins with the law from 2000 until this offense in 2008. So I think [the petitioner] has shown an ability to conform with the law, to comply with conditions on supervised release. And certainly at age 65, with high blood pressure and perhaps other medical issues, [the petitioner] is just not going to be in a condition to think about violating the law.

<u>West</u>, Case No. 08-cr-157, Dkt. No. 84 at 20. There is no mention of the career offender guideline in these lines. Elsewhere in the hearing, defense counsel admitted that the petitioner qualified as a career offender. <u>Id.</u> at p. 19 ("And also I think Mr. West, he is in criminal history category VI based on the career offender classification, but based on the actual points he has accrued he would be in criminal history category IV[.]"). Judge Clevert considered the petitioner a career offender. <u>Id.</u> at p. 24 ("Well, Mr. West, when I look at your criminal history it is certainly clear that you are indeed considered and have been found a career criminal. Your criminal history includes crimes of violence."). The petitioner acknowledged in his plea agreement that he might qualify as a career offender; he did qualify, and the guidelines Judge Clevert relied upon were the guidelines applicable to a career offender who had been convicted of a §924(c) charge.

The court cannot imagine any argument the petitioner's trial counsel could have made to challenge the career offender classification. As noted, the petitioner met all of the qualifications under §4B1.1(a)—he was at least

eighteen at the time he committed the robberies, the robberies were crimes of violence (certainly the May 23 armed robbery was) and the defendant had two prior felony convictions for crimes of violence. The petitioner's counsel would have had no legal argument that the petitioner did not qualify. The only argument defense counsel could have made was the one he *did* make—that Judge Clevert should impose a sentence below the career offender guidelines (and below the government's recommended sentence). That is what he did; he did not provide ineffective assistance.

Next, the petitioner argues that the government had agreed to recommend a sentence "not to exceed twenty years," (brief, dkt. no. 2 at 4), or "less than 20 years," (petition, dkt. no. 1 at 7). He argues that Judge Clevert erroneously used twenty years as a starting point, rather than using the guidelines, and "worked backward to craft the sentence imposed." Dkt. No. 2 at 4. He alleges that Judge Clevert "presumed 240 months imprisonment, subtracted 84 months for the gun charge, which left 156 months. A term of 146 months was imposed for the robberies, resulting in a 230 month sentence." Id.

The petitioner is incorrect about the government's agreed recommendation—it did not agree to recommend a sentence "not to exceed" twenty years, or a sentence of "less than" twenty years. The government agreed to recommend a sentence of twenty years—period. West, 08-cr-157 at Dkt. No. 59, ¶26. Regardless, even if the petitioner is correct that Judge Clevert *did* start with the government's 240-month recommendation rather than the guidelines,

31

that was a *benefit* to the petitioner. The low end of the guideline range was 272 months—almost three years *more* than the government's twenty-year recommendation. If Judge Clevert did work backward from twenty years, he worked backward from a below-guidelines sentence. The petitioner's trial counsel was not ineffective for refusing to challenge Judge Clevert's sentence on that ground.

The petitioner also asserts that "since his applicable guideline range of Offense Level 21, Criminal History Category IV results in an advisory range of 57 to 71 months," dkt. no. 1 at 7, the 146-month sentence Judge Clevert imposed was "nearly two and one-half times the applicable range average," dkt. no. 2 at 5. The petitioner would be *almost* right if he had not qualified as a career offender. If he hadn't qualified as a career offender, he would have had an adjusted offense level of 22 in criminal history category IV and a sentencing range—on the robberies alone—of sixty-three to seventy-eight months. But he *was* a career offender, as the court has explained. He met all the requirements—he was over eighteen when he committed the offenses, the offenses were crimes of violence and he had two or more felony convictions for crimes of violence. His lawyer conceded that he was a career offender and did not object. The government argued that he was a career offender. Judge Clevert found that he was a career offender. What the petitioner's sentence might have been if he hadn't been a career offender is irrelevant. The petitioner's lawyer was not ineffective in not raising this argument.

Finally, even if the petitioner *could* show that Judge Clevert erred in concluding that he was a career offender, the Seventh Circuit has held that an "erroneous determination that the petitioner was a career offender in calculating his sentence was not a cognizable error under § 2255 post-*Booker*." Coleman, 763 F.3d at 708 (citing Hawkins, 706 F.3d 820).

The petitioner is not entitled to §2255 relief on Ground One.

2.      *Ground Two—Tapia v. United States*

The petitioner's second ground for relief is that Judge Clevert gave him a longer sentence so that he could receive health care, and he argues that under Tapia, this was impermissible. Dkt. No. 1 at 7. The petitioner concedes that the Supreme Court decided Tapia after his first appeal became final but argues that his lawyer was ineffective for failing to raise Tapia in the second appeal. Id. In support of this argument, the petitioner also asserts that the 2010 Affordable Care Act would have made it easier for him to get health care and that as a veteran, he is eligible for medical care through the Veteran's Administration. Dkt. No. 2 at 7. He asserts that "[i]n the first direct appeal, the Seventh Circuit affirmed the sentence due to West's need for healthcare, even without determining how much the sentencing court had departed from the computed guidelines," and argue that "[i]n light of TAPIA, that decision is no longer valid." Id.

In Tapia, the petitioner had been convicted of, among other things, smuggling unauthorized aliens into the United States. Tapia v. United States, 564 U.S. at 321. The district court had calculated her guidelines range at forty-

one to fifty-one months and imposed a fifty-one-month sentence (the high end of the applicable range) followed by three years of supervised release. Id. "In explaining its reasons, the [district] court referred several times to Tapia's need for drug treatment, citing in particular the Bureau of Prison's Residential Drug Abuse Program (known as RDAP or the 500 Hour Drug Program)." Id. The district court twice indicated that Tapia's prison term should be long enough for her to complete that program, saying that

> [t]he sentence has to be sufficient to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program.
>
> *  *  *  *
>
> Here I have to say that one of the factors that—I am going to impose a 51-month sentence, . . . and one of the factors that affects this is the need to provide treatment. In other words, so she is in long enough to get the 500 Hour Drug Program, number one.

Id. On appeal, Tapia argued that the court erred in lengthening her sentence to make her eligible for RDAP. Id. at 322.

The Supreme Court reviewed the history of the Sentencing Reform Act of 1984; in particular, it looked at 28 U.S.C. § 994(k), which directed the U.S. Sentencing Commission to "ensure that the Guidelines 'reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.'" Id. at 329-330. The Court held that §3582(a) "prohibit[ed] a court from considering those needs to impose or lengthen a period of confinement when selecting a sentence from within, or choosing to depart from, the

Guidelines range." Id. at 330. It concluded that the sentencing judge's comments "suggest[ed] that the court may have calculated the length of Tapia's sentence to ensure that she receive certain rehabilitative services," id. at 334, and remanded for further proceedings, id. at 335.

The Court explained, however, that it did not disapprove of the sentencing court's discussion of the need for rehabilitation. Id. at 334. The Court explained that

> [a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters. And as noted earlier, a court may urge the BOP to place an offender in a prison treatment program. . . . Section 3582(a) itself provides, just after the clause at issue here, that a court may "make a recommendation concerning the type of prison facility appropriate for the defendant"; and in this calculus, the presence of a rehabilitation program may make one facility more appropriate than another. So the sentencing court here did nothing wrong—and probably something very right—in trying to get Tapia into an effective drug treatment program.

Id. at 334.

Tapia is distinguishable from the petitioner's case, and the petitioner's lawyer was not ineffective in failing to raise the Tapia issue in the second appeal. The court in Tapia not only sentenced the defendant within the guideline range, but chose the high end of the range for the stated purpose of making sure Tapia qualified for the RDAP program. In contrast, Judge Clevert not only did not impose a sentence at the high end of the guideline range, but imposed a sentence *below* the *low* end of the range—forty-two months, or three and a half years, below the low end of the range. Far from electing to give the

petitioner the highest sentence the guidelines allowed in order to provide him with health care, Judge Clevert imposed a below-guidelines sentence (and a sentence below the government's recommendation) despite acknowledging that the petitioner needed health care and speculating that he might find it hard to obtain outside prison.

Judge Clevert analyzed the petitioner's medical needs, and noted that as people get older, they tended to need more medical care. West, Case No. 08-cr-157, dkt. no. 84 at 27. He observed that for an older incarcerated person, the public paid the price for the inmate's increased medical needs, because the older inmate likely would need to see prison medical staff for "whatever ills crop up." Id. Judge Clevert then said, "Now, that's a plus and a minus." Id. He apparently meant that it was a "plus" for the petitioner, because he went on to discuss that the petitioner, given his financial circumstances, might find it hard to obtain medical care outside of prison. Id. Judge Clevert did not explain what he believed the "minus" was. But he did not go on to say, "so I am going to give you a higher sentence, to give you the opportunity to obtain free prison medical care for a longer time." While Judge Clevert did state at page 29 of the transcript that he believed the sentence he imposed would allow the petitioner to receive both health and psychological care, he did not state that he was imposing a *longer* sentence to make sure the petitioner received that care.

The petitioner's Tapia argument assumes that the 230-month sentence Judge Clevert imposed was an above-guidelines sentence. As the court has discussed, it was not. It was a below-guidelines sentence, and a sentence below

the government's recommendation. Only if Judge Clevert miscalculated the guidelines, or imposed a sentence at the high end of the guideline range to make sure the petitioner received medical care, would he possibly have committed a <u>Tapia</u> violation, and he did not. Judge Clevert did what 18 U.S.C. §3553(a)(2)(D) requires sentencing judges to do—"consider . . . the need for the sentence imposed . . . to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner." He considered that as one of the numerous §3553(a) factors, and came to the conclusion that all of those factors warranted a below-guidelines sentence of 230 months. The petitioner's counsel was not ineffective in failing to make a <u>Tapia</u> argument in the second appeal.

The petitioner's arguments that the passage of the Affordable Care Act in 2010, *after* his sentencing date, or the fact that as a veteran he can obtain medical care at the VA, do not demonstrate that his counsel was ineffective. At the time Judge Clevert imposed sentence, the Affordable Care Act didn't exist; counsel could not argue that Judge Clevert erred in failing to consider a factor that did not exist as of the sentencing date. The court also notes that it was the petitioner, through his counsel, who urged Judge Clevert to consider the petitioner's health needs when considering the appropriate sentence. Counsel made that request as part of his argument that Judge Clevert should impose a lower sentence than the 240 months the government recommended. While Judge Clevert did not end up imposing the 120- to 180-month sentence defense counsel suggested (a sentence seven and a half to twelve and a half

years below the low end of the guideline range), Judge Clevert did impose a below-guidelines sentence, as defense counsel asked. The petitioner cannot prevail on Ground Two of the petition.

3. *Ground Three—The Government Violated the Plea Agreement by Recommending a Twenty-Year Sentence without Reducing that Recommendation by the Time the Petitioner Would Have to Serve for Violating Parole*

The court has noted that the petitioner had a 1985 federal conviction for bank robbery, reflected at ¶57 of the PSR. That case, <u>United States v. West</u>, Case No. 85-cr-70, is so old that it is not reflected on the court's electronic docketing system. It also pre-dates the creation of the sentencing guidelines and the statutory scheme that abolished parole in the federal system. Paragraph 57 of the PSR, however, indicates that on August 20, 1985, the court sentenced the petitioner to twenty years of imprisonment on each of Counts 1 and 2, to run concurrently, and ten years on Count 3, to run concurrently, for a total sentence of imprisonment of twenty years. The petitioner was paroled on June 26, 1995, spent some time in Parsons House (a halfway house in Milwaukee), then went to live with his mother and began working. When he was convicted of the 1995 bank robbery in <u>United States v. West</u>, Case No. 95-cr-207-RTR, the Parole Commission was notified, and the petitioner's parole was revoked on August 4, 1999. He was paroled again on November 13, 2000, again spend some time at Parsons House, and was serving his parole term when he was arrested on the instant bank robberies on May 24, 2009. The PSR indicated that "[t]he Parole Commission was notified of the

instant offense and a warrant was issued, however, no hearings have been scheduled."

Ground Three of the §2255 petition stated that the petitioner "will serve 7½ years "for the "pending parole violation." Dkt. No. 1 at 8. The petitioner calculated that, adding the 230-month sentence Judge Clevert imposed to the seven-and-a-half-year sentence he said he would receive on the parole violation would result in his serving "26½ years," which meant that he would "not exit prison at 68 years old as contemplated by the Court." Id. He asserted that this he would not serve the term "envisioned by the Court which violates his Fifth Amendment due process guarantee." Id. He characterized this argument as an argument that Judge Clevert accepted the government's recommendation of a sentence of "less than 20 years," but "wrongly computed the sentence whereby the term imposed will result in 26 ½ years imprisonment." Id.

The petitioner phrased the argument differently in his brief. There, he first implied that the government had violated the plea agreement by recommending that he be sentenced to twenty years "without regard for the 90 month parole violation already anticipated." Dkt. No. 2 at 8. He said that he "[sought] enforcement of the plea promises." Id. He claimed that the government's promise in the plea agreement to recommend a twenty-year sentence "included the 7½ year term left to serve as a parole violation on the prior charge," and asserted that "[a]ll parties were aware of this outstanding term." Id. at 9.

The petitioner also argued that the twenty-year sentence that he had anticipated "is compiled by adding the guideline sentence for bank robbery (Offense Level of 21, Criminal History Category IV, 57-71 months, 64 month median sentence) of 64 months, plus 84 months brandishing of firearm, plus 90 months parole violation for Case Number 85 CR 070, see US V. WEST 7 F.3d 238 (7th cir 1993)." Id. at 8. Using this calculation, the petitioner asserts that "[t]he total term in prison is 238 months, and is the sentence West was presented when he agreed to enter the guilty plea." Id. He asserts that his "age at the time of release was pivotal in the Government's recommendation," noting that the prosecutor had commented that a twenty-year sentence would result in the petitioner being released at an advanced age. Id. at 8-9. He also asserted that Judge Clevert had stated that he wanted to impose a sentence "which would not be tantamount to a life sentence," and that he had imposed the 230-month sentence with that concern in mind. Id. at 9.

The petitioner concluded:

> West committed the crime at 52 years old, and he has several health concerns. Leaving prison at 70 years old (which good time credits) would put him on the street at his life expectancy. This is what he signed for, and what he expected. West seeks enforcement of the plea agreement and sentencing, including all imprisonment based on this charge, to be compiled within the 20 year promise.

Id.

The government has responded that there is nothing in the record to support the petitioner's arguments. Dkt. No. 7 at 7-8. It adds that the Bureau of Prisons' web site shows that the petitioner's anticipated release date is February 2025—fifteen years from his sentencing date, and fifteen and a half

years or so from the date he was arrested for the bank robberies and detained. Given that Judge Clevert sentenced the petitioner to 230 months—nineteen years and two months—the government deduces that the petitioner must not have received any additional time for the parole violation. Id. at 8.

Faced with this information, the petitioner asked in his reply brief that the court "stay and abey this issue pending future adjudication of West's parole violation by the Parole Commission." Dkt. No. 12 at 4. He also asserted in a footnote that the person who prepared his §2255 petition didn't thoroughly research the issue, and that "[u]pon further research by this writer the government is correct and this issue at this time appears to be without merit but may ripen at a later date." Id. at 4 n.2. The petitioner never has responded to Judge Clevert's March 31, 2017 letter asking him to clarify whether he wanted to withdraw the issue. Dkt. No. 17.

The court will not "stay" a ruling on this issue, because the petitioner's claim has no merit. There is no evidence anywhere in the record to support the petitioner's claim that the government promised to recommend a "global" sentence of twenty years for this case and any parole revocation in the 1985 case. The plea agreement says nothing about the 1985 case or about a parole violation sentence. There was no mention of a parole violation sentence at the sentencing before Judge Clevert. According to the PSR, the Parole Commission had not even scheduled any hearings on the violation as of the time of the PSR.

The petitioner insists that he is facing a seven-and-a-half-year sentence for the parole violation. The court has no idea where the petitioner gets that

from. He cited a Seventh Circuit case, <u>United States v. West</u>, Case No. 90-2768, 1993 WL 394822 (7th Cir. Oct. 7, 1993). That four-paragraph, unpublished decision is an order affirming the district court's denial of the petitioner's motion to amend his sentence. <u>Id.</u> at 1. It says that the petitioner had asserted "that the imposition of special assessments on Counts 1 and 2 was illegal because the terms of imprisonment on those Counts run concurrently." <u>Id.</u> The Seventh Circuit rejected the petitioner's argument in two paragraphs, concluding that "the special assessments ordered by the court were required pursuant to 18 U.S.C. § 3013(a)(2)(A) and do not invalidate the sentence." <u>Id.</u> This case has nothing to do with the petitioner's parole, nothing to do with violation of the parole.

There is nothing in this record to support the petitioner's claims that the government promised him that the twenty-year sentence would include any parole violation term. There is nothing in this record to support the petitioner's claim that the government's recommendation of a twenty-year sentence violated the plea agreement; exactly the opposite is true. There is nothing in this record to support the petitioner's claim that Judge Clevert miscalculated his sentence. There is nothing in this record to support the *petitioner's* calculations. There is nothing to indicate that the petitioner's counsel was ineffective in any way relating to this issue, and the petitioner is not entitled to relief on this claim.

### 4. *Ground Four—Ineffective Assistance of Counsel*

The petitioner's final ground for relief asserted that his counsel, Brian Mullins, provided ineffective assistance of counsel by "fail[ing] to alert the Court to the seven and one-half years West would serve on the parole violation, which resulted in the Court computing a sentence longer than the Court stated it was attempting to do," by "fail[ing] to advocate, or even compute, the applicable guideline without the career offender enhancement, thereby denying the Court a starting point for the sentence," and by "fail[ing] to raise a TAPIA issue within the second direct appeal." Dkt. No. 1 at 8-9. The petition asserted that "[i]f not for Counsel's failures, West had a reasonable probability of receiving a shorter prison term." Id. at 9.

To prevail on a claim for ineffective assistance of counsel, the petitioner must make a two-fold showing: first, that his counsel's actions fell below an objective standard of reasonableness and second, that his counsel's deficient performance prejudiced the petitioner. Delatorre, 847 F.3d at 845 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). In order to show that his counsel's performance fell below an objective standard of reasonableness, the question "is not whether counsel's conduct 'deviated from best practices or most common custom,' but instead, 'whether an attorney's representation amounted to incompetence under 'prevailing professional norms.'" Id. (quoting Sussman v. Jenkins, 636 F.3d 329, 349-50 (7th Cir. 2011)).

The court has analyzed each of the grounds/arguments the petitioner says Mullins should have raised and has concluded that none of them have

merit. And because "an attorney is not ineffective for failing to raise a meritless argument," Washington v. Boughton, 884 F.3d 692, 701 (7th Cir. 2018), the petitioner cannot demonstrate that his counsel was ineffective.

The court cannot leave this argument, however, without expressing a grave concern about one facet of the petitioner's ineffective assistance argument. In his brief, the petitioner asserted that in an attached affidavit from Attorney Mullins, Mullins admitted that he "inadvertently did not raise the TAPIA issue in the direct appeal," and confirmed that he and the petitioner had contemplated that "a sentence of 7 years less than imposed." Dkt. No. 2 at 11. The petitioner relies on these admissions to argue that Mullins erred by failing to raise these arguments at his sentencing, and that the petitioner received a longer sentence "than he was led to anticipate." Id.

The petitioner did attach a document to his brief, at Dkt. No. 2-1. It purports to be an affidavit from Brian P. Mullins. The court believes, however, that the document is fraudulent. Instead of being notarized, as most affidavits prepared by lawyers are, it purports to be a verified affidavit under 28 U.S.C. §1746. People who don't have access to notaries—such as incarcerated persons—used verified affidavits. It does not contain Attorney Mullins's Wisconsin State Bar number; members of the Wisconsin bar are required to include their bar numbers on documents they prepare and file. It is in the same font and format as the petitioner's other filings—it appears to have been typed on a typewriter, in contrast to the documents Attorney Mullins filed in the underlying case, which were full-justified and prepared on a word

processor. It contains misspelled words and unofficial citations to cases.

Perhaps most troubling is the use of the first-person in paragraph seven, which reads:

> Before the Supreme Court pronounced the decision in TAPIA V. US 563 US ___, 180 L.ed 2d 357 (2011), which proscribed a district court from tailoring a sentence to accommodate healthcare or drug rehabilitation, *I* was sentenced in this case wherein the sentence was lengthened due to the Court's concern that *I* would receive better healthcare in the Bureau of Prisons.

Dkt. No. 2-1 at ¶7 (emphasis added).

If, as the court suspects, the petitioner created the affidavit and forged Attorney Mullins's signature, or had someone else create the affidavit and forge Mullins's signature, the false, forged affidavit constitutes criminal perjury under 18 U.S.C. §1621(2). Whoever signed Mullins's name may have committed forgery under Wisconsin law, in violation of Wis. Stat. §943.39. Whoever prepared and caused the affidavit to be filed arguably attempted to commit a fraud on the court.

It is clear to the court that the petitioner does not agree with the sentence Judge Clevert imposed and does not want to serve the entirety of that sentence. He has every right to try to challenge the sentence *lawfully*. But it is not lawful to present falsified evidence to the court. The court cautions the petitioner that if he files other fraudulent documents with this court or the Seventh Circuit, he could face sanctions or the government could consider filing criminal charges.

## IV.    Motion for Evidentiary Hearing (Dkt. No. 3)

Under Rule 8 of the Rules Governing Section §2255 proceedings, the court has the discretion to determine whether to order an evidentiary hearing. "Such a hearing is not required if 'the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief.'" Martin v. United States, 789 F.3d 703, 706 (7th Cir. 2015) (quoting 28 U.S.C. §2255(b)). The court has concluded that the petitioner is not entitled to relief, and the court will deny the motion for an evidentiary hearing.

## V.    Motions For Prompt Disposition (Dkt. Nos. 20, 23)

As the court noted earlier, this case has been fully briefed for four and a half years; for almost three of those years, it was assigned to this judge. The court deeply regrets its delay in issuing this order. Judge Randa, who presided over one of the petitioner's other cases, passed away in September 2016, and Judge Clevert retired in March 2017, leaving this district with only three of its four assigned Milwaukee judges. To date, Judge Randa's successor has not been appointed. The court's case load has increased, and this court is severely behind in issuing decisions, as evidenced by its delay in issuing this ruling. The petitioner—and every other litigant in this district—deserves better, and the court regrets that he did not get his answer as promptly as he deserves.

The court will deny the motions for prompt decision as moot.

## VI.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to issue a certificate of appealability. A court may issue

a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Peterson v. Douma</u>, 751 F.3d 524, 528 (7th Cir. 2014) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability, because no reasonable jurist could debate that the petitioner's claims do not warrant relief under 28 U.S.C. §2255.

## VII.    Conclusion

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **DENIES** the petitioner's motion for an evidentiary hearing. Dkt. No. 3.

The court **DENIES AS MOOT** the petitioner's motions for prompt disposition. Dkt. Nos. 20, 23.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED.**

Dated in Milwaukee, Wisconsin this 31st day of January, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**